# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICHARD SAUNDERS,                              Case No. 1:13-cv-118
      Plaintiff,                              Barrett, J.
                                               Litkovitz, M.J.

    vs

COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
      Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 20), and plaintiff's reply memorandum (Doc. 21).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in September 2009, alleging disability since September 10, 2009, due to subarachnoid hemorrhage, myocardial infarction, cerebral vasospasm, surgery from groin to implant platinum coils into brain to stop bleeding, short term memory loss, and extreme weakness from surgery. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before an administrative law judge (ALJ). Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 30, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since September 10, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: status post myocardial infarction, status post subarachnoid hemorrhage, cognitive disorder not otherwise specified, and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following. He can lift and/or carry twenty pounds occasionally and ten pounds frequently; he can stand and/or walk eight hours with normal breaks; he can sit with normal breaks for a total of eight hours; and he is unlimited in pushing and/or pulling, other than as shown for lifting and/or carrying. The [plaintiff] can never climb ladders, ropes, or scaffolds; and he must avoid all exposure to hazards, such as unprotected heights or dangerous machinery. The [plaintiff] can do simple, routine, repetitive tasks with no fast-paced production requirements and little use of judgment. The [plaintiff]'s work must require only simple work related decisions, with few, if any workplace changes. The [plaintiff]'s work must not regularly involve solving novel nonverbal problems; and not normally require encoding new verbal or visual information into memory after learning the job and where new

3

information is presented in a highly organized fashion. In addition, the [plaintiff]'s work must not require speed of verbal fluency; and must allow average to below average, but acceptable, fine motor speed and dexterity.

6. The [plaintiff] is unable to perform any past relevant work[1] (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1957 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform[2] (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 10, 2009, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 20-31).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1]Plaintiff's past relevant work was as a dump truck driver. (Tr. 29, 183).

[2]The ALJ found that an individual with plaintiff's limitations would be able to perform the requirements of representative occupations such as cleaner/housekeeper with 1,500 jobs available locally and 275,000 jobs available nationally; product inspector with 800 jobs available locally and 270,000 jobs available nationally; and a hand packing inspector/packer with 1,600 jobs available locally and 200,000 jobs available nationally. (Tr. 30).

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson,* 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The medical findings and opinions of record have been adequately summarized in plaintiff's statement of errors and the ALJ's decision (Doc. 13 at 2-5, Tr. 18-29) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) the ALJ erred by failing to adequately explain why he believed plaintiff's impairments did not meet or equal Listing of Impairment 12.02; and (2) the ALJ improperly weighed the medical opinions, which led him to form an inaccurate residual functional capacity.  (Doc. 13).[3]

      1.  <u>Whether the ALJ failed to adequately explain his Listing decision.</u>

Plaintiff asserts the ALJ erred in finding that plaintiff's cognitive impairment does not meet or equal Listing 12.02.[4]  Plaintiff asserts that in Step Three of the ALJ's analysis, he simply repeated the language of Listing 12.02 and summarily stated that plaintiff's cognitive impairment does not meet those criteria.  (Doc. 13 at 10, citing Tr. 21-22).  Plaintiff alleges, "The ALJ failed entirely to cite to any specific evidence which supports his assertions and he

---

[3]Plaintiff does not challenge the ALJ's decision on plaintiff's physical limitations.  Therefore, the Court's decision is limited to reviewing the ALJ's decision on plaintiff's mental impairments.

[4] In order to meet Listing 12.02, the claimant must meet the requirements in either both "paragraph A" and "paragraph B" or "paragraph C" alone.  20 C.F.R. § 404, Subpart P, Appendix 1.  To satisfy the "paragraph A" criteria, the claimant must show demonstration of a loss of specific cognitive abilities or affective changes with medically documented persistence of at least one of a number of enumerated areas including memory impairment. *Id.*

To satisfy the "paragraph B" criteria, the claimant must show at least two of the following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. *Id.*

The paragraph "C" criteria are met where a claimant has a medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02.

6

failed to acknowledge the severe cognitive deficits that [p]laintiff does have." *Id*. Plaintiff

argues he satisfies the "paragraph C" criteria of Listing 12.02 because he has not been able to

function outside of a highly supportive living arrangement and this has remained constant since

his aneurysm burst in September 2009. (Doc. 13 at 11). Plaintiff contends the ALJ's failure to

articulate the "how and why" of his Listing decision amounts to reversible error under *Risner v.*

*Comm'r of Soc. Sec.*, No. 1:11-cv-036, 2012 WL 893882 (S.D. Ohio Mar. 15, 2012) (Spiegel, J.).

In *Risner*, the Court reversed and remanded for further proceedings a case where the ALJ

failed to adequately explain the basis for his decision that the plaintiff did not meet or equal a

Listing. *Risner*, 2012 WL 893882, at *5. The ALJ in *Risner* made a specific finding of fact

that "[t]he claimant does not have an impairment or combination of impairments that meets or

medically equals one of the listing impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

C.F.R. 404.1520(d), 404.1525, 404.1526)." *Risner*, No. 1:11-cv-36 (Doc. 7-2, Tr. 16). The

ALJ in *Risner* gave no explanation whatsoever for this finding and simply continued to the next

step of the sequential evaluation process. Despite the presence of substantial evidence in the

record that could arguably support the ALJ's Listing decision, the *Risner* Court determined that

the ALJ in the first instance must "assess whether the evidence put forth shows that Plaintiff

meets or equals a Listing." *Risner*, 2012 WL 893882, at *5. The Court noted:

> Requiring a reasoned and explained conclusion is not merely a formalistic
> requirement. On the contrary, as noted by the Sixth Circuit, it is a necessary
> component for this Court to ascertain whether the ALJ's decision was supported
> by substantial evidence.

*Id. See also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (finding

ALJ erred by failing to analyze claimant's physical condition in relation to the Listed

Impairments) (cited with approval in *Risner*). Because the ALJ in *Risner* failed "to complete a

7

required step in the five-step analysis," the Court remanded the matter to enable the ALJ "to complete his task." *Risner*, 2012 WL 893882, at *5.

Here, in contrast, the ALJ did not altogether skip the narrative explanation in Step Three of the sequential evaluation process as did the ALJ in *Risner*. The ALJ's discussion focused on whether plaintiff's impairments met or equaled the "paragraph B" and "paragraph C" criteria of Listing 12.02.[5] Citing to the "mild" and "moderate" limitations found by the State agency psychologist (Tr. 21, citing Tr. 605), which the ALJ determined were "consistent with the overall mental health records in evidence" and "discussed in greater detail in the analysis below," the ALJ found plaintiff's impairments did not cause the "marked" limitations required by Listing 12.02B. (Tr. 21). The ALJ also determined that plaintiff did not meet the "paragraph C" criteria of the Listing 12.02 because plaintiff did "not have a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and one of the required additional criteria of Listing 12.02C. (Tr. 21-22). Given the ALJ's reference to and thorough discussion of the other record evidence in his later analysis, the Court is able to discern why the ALJ did not believe plaintiff was unable to function outside of a highly supportive living arrangement for purposes of

---

[5] It is apparent from the ALJ's Step Two severity finding that he deemed plaintiff's short-term memory/cognitive impairment to be a severe impairment for purposes of paragraph A of Listing 12.02 and therefore no discussion of the paragraph A criteria was necessary.

the "paragraph C" criteria as plaintiff contends. *See* Tr. 27 (stating plaintiff may need "some assistance from his family" but is likely able to make typical daily decisions fairly well). The ALJ's minimally articulated Listing analysis is sufficient for this Court to discern the basis for the ALJ's finding that plaintiff did not meet or equal Listing 12.02. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination."). Plaintiff's first assignment of error should be overruled.

        2.  <u>Whether the ALJ's RFC finding is supported by substantial evidence.</u>

        a.  *The relevant medical evidence*

      Plaintiff suffered a ruptured aneurysm of the brain and related myocardial infarction in early September 2009. (Tr. 242-246, Tr. 360-505). He was treated surgically with an occlusion of his aneurysm by coil embolization (Tr. 427-33) and was later transferred to the Drake Center for inpatient physical and occupational therapy and medical management from September 26 to October 5, 2009. (Tr. 249-94, 319-22).

      In January 2010, plaintiff was again hospitalized for a right frontotemporal craniotomy and clipping of two additional aneurysms. (Tr. 453-54). On March 1, 2010, plaintiff reported his symptoms were improved and better; his pain level was a zero; his activity level was improved, but not back to full; and he was dependent on others for some activities. (Tr. 574). Plaintiff's neurosurgeon, Mario Zuccarello, M.D., reported that plaintiff was doing very well and had no appreciable consequences from the procedures or hemorrhages. (Tr. 575). In June 2010, plaintiff reported to Dr. Zuccarello that his symptoms were unchanged since his last visit, his activity was the same since last visit, but he was now completely dependent on others for his

daily functioning.    He reported no pain, except sharp pains every now and then in his heart.

(Tr. 576).    In September 2010, Dr. Zuccarello reported that plaintiff was doing very well, had a

nearly complete recovery from the subarachnoid hemorrhage, and "*still* complained of some

memory deficit."    (Tr. 589) (emphasis added).

On September 8, 2010, plaintiff was evaluated at the request of the Social Security

Administration by a consultative psychologist, James Rosenthal, Psy.D.    (Tr. 579-84).    Plaintiff

reported that since suffering his aneurysm, he gets easily confused and has difficulty with

short-term recall and word finding problems.    Dr. Rosenthal reported that plaintiff was pleasant,

alert, oriented, polite, and cooperative.    While he was able to follow and understand directions,

he often asked to have questions repeated.    During the mental status examination, plaintiff

slowly counted from one to twenty and twenty down to one; he made two errors when counting

backward from twenty to one; he recalled six digits forward but only three backward; he was

unable to correctly spell "world" backward; he made an error on a serial 3 task; and he could

recall only one of three words after five minutes.    (Tr. 582).    Plaintiff had difficulty trying to

express himself when he tried to interpret a proverb.    *Id.*    Dr. Rosenthal noted that plaintiff

displayed symptoms of dementia, such as word-finding difficulties, short-term memory deficits,

and some confusion, along with some depressive symptoms.    (Tr. 583).    Dr. Rosenthal

diagnosed plaintiff with Dementia due to Other General Medical Condition and Adjustment

Disorder with Depressed Mood, and assigned plaintiff a Global Assessment of Functioning

(GAF) score a GAF of 41.[6]    (Tr. 583-84).    Dr. Rosenthal opined that plaintiff is markedly

---

[6]The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological
functioning." *Konecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006).    A score of 41 to 50 is
indicative of "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends,
unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders*, p. 34 (4th ed. 2000).

impaired in understanding, remembering, and following simple one or two step job instructions;
in sustaining attention and concentration to complete daily work tasks; and in tolerating the stress
of day-to-day employment. (Tr. 584).

On October 12, 2010, Dr. Zuccarello reported that plaintiff "suffered a stroke after coiling
procedure and appears to have some cognitive deficits including short term memory loss. For
this reason, we are referring him for [a] neuropsychological evaluation by Dr. Jewell at Drake
Center." (Tr. 587).

On November 1, 2010, state agency psychologist Robelyn Marlow, Ph.D., reviewed the
record evidence and opined that plaintiff is mildly restricted in performing activities of daily
living and in maintaining social functioning; he would have moderate difficulties in maintaining
concentration, persistence, or pace; and he has had no episodes of decompensation. (Tr. 605).
Dr. Marlow noted that plaintiff is not receiving mental health treatment and he has not been
prescribed psychotropic medication. She also noted that plaintiff is able to take care of a pet,
take care of his personal needs, mow the lawn, drive, shop, count change, watch television, and
visit with others. Dr. Marlow also found that plaintiff reported no problems interacting with
others. Dr. Marlow opined that plaintiff can understand and remember simple instructions; he
has no problems relating with others; his concentration and persistence may be variable due to
his preoccupation with somatic symptoms; and he can work at a steady pace to sustain simple
repetitive work. Dr. Marlow also opined that plaintiff's allegation of short-term memory loss is
partially credible based on mental status examinations. Dr. Marlow assigned no weight to Dr.
Rosenthal's conclusions that plaintiff has marked limitations in his ability to follow simple one

11

or two-step instructions and his ability to concentrate or handle stress, noting these limitations are not consistent with the mental status examination and medical evidence of record.   (Tr. 611).

On November 10 and November 23, 2010, plaintiff was evaluated by neuropsychologist, George R. Jewell, Ph.D., at the request of plaintiff's neurosurgeon, Dr. Zuccarello, due to "[m]emory loss following subarachnoid hemorrhage and aneurysm repair."   (Tr. 614-17). Plaintiff reported adequate concentration and good long-term memory but difficulty with short-term memory.   (Tr. 614).   Dr. Jewell administered a battery of tests and reported plaintiff was cooperative and displayed good effort; the evaluation was considered a valid assessment of plaintiff's current neuropsychological functioning.   (Tr. 615).   Dr. Jewell reported that plaintiff's performance on nonverbal tasks was below premorbid expectations and may indicate some degree of cognitive decline.   (Tr. 615).   Plaintiff demonstrated weaknesses on tasks which emphasize speed of information processing and solving novel nonverbal problems.   Dr. Jewell noted that such tasks tend to have relatively greater sensitivity to cognitive decline than verbal tasks relying on retrieval of over-learned information.   (Tr. 615-16).   In terms of plaintiff's memory and learning abilities, Dr. Jewell reported that "[l]earning of a word list across trials fell within the severely impaired range and his learning curve was relatively shallow. . . . Recognition discrimination of the word list was severely impaired due to a high number of false positives. . . ."   (Tr. 616).   Dr. Jewell also reported:

> Across tasks of memory and learning Mr. Saunders demonstrated significantly difficulty encoding new information into memory but tended to retain what he did learn relatively well over time.   His performance was significantly better on memory tasks where information was presented in a highly organized fashion, suggesting that executive function limitations likely play some role in his memory encoding deficit.

12

(Tr. 616). Dr. Jewell concluded, "Neuropsychology testing indicates a variable but generally *moderate or greater deficit* in encoding new verbal and visual information into memory. This appears to be Mr. Saunders primary cognitive deficit and is consistent with his report in interview." (Tr. 617) (emphasis added). Dr. Jewell's diagnostic impression was "[m]oderate memory deficit and mild deficits in information processing speed and executive function due primarily to the subarachnoid hemorrhage due to burst aneurysm" and only a "[p]ossible small contribution from a heavy alcohol use history." *Id.* Dr. Jewell recommended that plaintiff should continue to receive assistance from family with managing money, appointments, and medications; he should not travel to unfamiliar places independently; and while he may need assistance from family with complex decisions, he will likely be able to make most typical day to day decisions fairly well. *Id.* Dr. Jewell concluded that plaintiff "does not currently have the memory capacity to be employed. Given that he is nearly 10 months post-injury, it is possible that his cognitive function will not improve much more. He may ultimately have permanent cognitive deficits, primarily in memory." *Id.*

Plaintiff subsequently had additional leaking in his basilar artery aneurysm requiring additional brain surgeries in April and July 2011, for resection of aneurysm and bypass to repair the basilar tip and intracranial aneurysms. (Tr. 686-89, 727, 756, 758).

 *b.  The governing regulations*

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.

2010) (citing 20 C.F.R. § 404.1527(d)(1)[7]).  *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d

873, 875 (6th Cir. 2007)).   When deciding the weight to give a non-treating source's opinion, the

ALJ should consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion.  *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 416.927(c)).

Because a non-examining source has no examining or treating relationship with the claimant, the

weight to be afforded the opinion of a non-examining source depends on the degree to which the

source provides supporting explanations for his opinions and the degree to which his opinion

considers all of the pertinent evidence in the record, including the opinions of treating and other

examining sources.   20 C.F.R. §§ 404.927(c)(3), 416.927(c)(3).

     *c.  Weight to the opinions of Dr. Jewell and Dr. Rosenthal*

     The ALJ accorded the "the greatest weight" to Dr. Jewell's neuropsychological

evaluation because he is a specialist in the field of neuropsychology, he saw plaintiff in the

course of treatment, and his testing was performed over two days and was very detailed.   (Tr.

27).   The ALJ stated that he accommodated certain findings by Dr. Jewell in his RFC by

determining that plaintiff:   (a) could do simple, routine, repetitive tasks with no fast-paced

production requirements and little use of judgment; (b) could make only simple work-related

decisions, with few, if any workplace changes; (c) could not perform work that regularly

involved solving novel non-verbal problems or required the encoding new verbal or visual

information into memory after learning the job; (d) could perform work where new information

is presented in a highly organized fashion; (e) could not perform work that required speed of

---

[7] Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012.   The provisions governing the
weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at

verbal fluency; and (f) could perform work that allowed for average to below average, but

acceptable, fine motor speed and dexterity.   (Tr. 22, 27-28).   However, the ALJ afforded "little

weight" to Dr. Jewell's conclusion that plaintiff did not have the memory capacity to work,

reasoning this finding was "not consistent with the substantial medical evidence of record and is

a conclusion reserved for the Commissioner."   (Tr. 26, 28).

     The ALJ afforded "less weight" to the report and opinion of Dr. Rosenthal, the

consultative examiner, because he is not a neuropsychologist, saw plaintiff on only one occasion,

and did not administer standardized tests.   The ALJ also found that Dr. Rosenthal's conclusions

are not consistent with the substantial medical evidence of record or his mental status

examination.   (Tr. 28).

    *d.  Resolution*

     Plaintiff contends the ALJ improperly weighed the opinions of Dr. Jewell and Dr.

Rosenthal in assessing plaintiff's RFC.   Plaintiff argues the ALJ "misinterpreted" Dr. Jewell's

report and contends that because the ALJ afforded the "greatest weight" to Dr. Jewell's

evaluation, the ALJ should have adopted Dr. Jewell's conclusion that plaintiff was unable to

sustain work activity because of his memory deficits.   (Doc. 13 at 12).   Plaintiff alleges Dr.

Jewell's opinion on plaintiff's functional abilities is consistent with Dr. Rosenthal's conclusions

and that the ALJ's interpretation of the objective testing is unsupported by the record.   *Id*. at 13.

     The Commissioner argues the ALJ appropriately gave little weight to Dr. Jewell's

assessment that plaintiff was unable to work because the ultimate conclusion of whether a

claimant is disabled is reserved to the Commission.   (Doc. 20 at 8, citing 20 C.F.R. §

---

§§ 404.1527(c), 416.927(c).

404.1527(e); SSR 96-5p, 1996 WL 37418, at *1 (1996)).   The Commissioner contends the ALJ

properly accommodated certain findings by Dr. Jewel in formulating the RFC and appropriately

evaluated Dr. Jewell's various conclusions.

The Court finds the ALJ's assessment of the opinions of Dr. Jewell and Dr. Rosenthal is

not supported by substantial evidence.   While the ALJ gave "great weight" to Dr. Jewell's

neuropsychological testing, he gave "little weight" to the conclusion Dr. Jewell drew from that

testing, *i.e.,* that plaintiff "does not currently have the memory capacity to be employed."   The

ALJ reasoned that that Dr. Jewell's opinion that plaintiff lacks the memory capacity to be

employed is not consistent with "the substantial medical evidence of record."   (Tr. 28).   Yet, the

only testing and mental status examinations in the record are from Dr. Jewell and Dr. Rosenthal,

the physicians who actually examined plaintiff, and both examiners opined that plaintiff's

memory problems cause significant and marked impairment on plaintiff's ability to sustain work

activity.

The only contrary evidence is from the non-examining state agency psychologist, Dr.

Marlow, to whom the ALJ gave "some" weight.   Yet, Dr. Marlow issued her opinion before Dr.

Jewell conducted his neuropsychology testing and therefore did not have the benefit of Dr.

Jewell's report.   Dr. Marlow also discounted Dr. Rosenthal's opinion because she thought it was

not "consistent with mental status exam/MER [medical evidence of record]."   (Tr. 611).

However, Dr. Marlow never explained why or how Dr. Rosenthal's opinion was inconsistent

with his own mental status examination or what other evidence in the record was contrary to Dr.

Rosenthal's opinion.   The only evidence in the record at that point on plaintiff's cognitive

impairment was from (1) Dr. Zuccarello, plaintiff's treating neurosurgeon, who reported that

16

plaintiff suffered cognitive deficits including short term memory loss from a stroke after coiling

procedure and referred plaintiff for a neuropsychological evaluation, and (2) Dr. Rosenthal, who

performed a psychological and mental status examination, from which he concluded that plaintiff

is markedly limited in his ability to understand, remember, and follow instructions; to sustain

attention and concentration to complete daily work tasks; and to tolerate the stresses of day to

day work activity.  (Tr. 584).    As explained above, the weight to be afforded the opinion of a

non-examining source depends on the degree to which the source provides supporting

explanations for her opinion.    20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).    Both Dr. Marlow

and Dr. Rosenthal based their opinions on the same mental status examination performed by Dr.

Rosenthal, but drew different conclusions therefrom.    Dr. Marlow never explained the reasons

for the difference of opinion, and that failure diminishes the weight to be given her opinion.  *See*

*Foxx v. Comm'r of Soc. Sec.*, No. 1:11-cv-209, 2012 WL 3132666, at *3, *5 (S.D. Ohio Aug. 1,

2012) (Barrett, J.) ("[A] non-examining physician's opinion may be accepted over that of an

examining physician when the non-examining physician clearly states the reasons that his

opinions differ from those of the examining physicians.") (quoting *Lyons v. Soc. Sec.*, 19 F.

App'x 294, 302 (6th Cir. 2001)).    In the absence of any explanation why Dr. Marlow believed

that the mental status exam does not support the marked limitations identified by Dr. Rosenthal,

Dr. Marlow's opinion does not support the ALJ's conclusion that "the substantial medical

evidence of record" was inconsistent with Dr. Jewell's opinion.

The ALJ also found that Dr. Jewell's opinion that plaintiff does not currently have the

memory capacity to be employed is "a conclusion reserved for the Commissioner."    (Doc. 28).

Plaintiff acknowledges that whether a person is disabled within the meaning of the Social

17

Security Act is an issue reserved to the Commissioner, and a medical opinion that a person is "disabled" or "unemployable" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). However, plaintiff contends that rather than a comment on "disability," Dr. Jewell's statement was an opinion on the likelihood that plaintiff's memory deficits would impede his ability to sustain competitive employment – an opinion that is supported by his own neuropsychology test results and Dr. Rosenthal's opinion that plaintiff has "marked" limitations in the relevant work-related abilities. The Court agrees. Dr. Jewell's conclusion that plaintiff "does not currently have the memory capacity to be employed" is not so much a comment that plaintiff is "disabled," but more an opinion on the level of severity of his memory impairment. More importantly, both Dr. Rosenthal's and Dr. Jewell's assessments set forth objective and clinical findings to support their opinions of significant and marked impairments. When Dr. Jewell's statement is read in conjunction with Dr. Rosenthal's evaluation and opinion, it is clear that the opinions of these two examining physicians are consistent with the conclusion that plaintiff is markedly impaired by his short term memory problems in the mental activities required to sustain work activity on an ongoing basis.

The ALJ also reasoned that plaintiff's mental impairments were not disabling because he had never been psychiatrically hospitalized or required outpatient mental health treatment. (Tr. 26). The ALJ's reliance on plaintiff's failure to seek mental health treatment as a basis for discounting the severity of plaintiff's cognitive impairment is unreasonable. Plaintiff's cognitive impairment is the result of bleeding in his brain for which he has had multiple surgeries. Dr. Jewell identified the most likely source of plaintiff's cognitive impairment as subarachnoid hemorrhage due to a burst aneurysm which Dr. Jewell reported was likely not to

18

improve and be permanent. (Tr. 617). It is not apparent how the lack of psychiatric hospitalization or mental health treatment is even relevant to plaintiff's level of functioning given the source of plaintiff's cognitive impairment described by Dr. Jewell. This reason does not support the ALJ's decision in this case.

Plaintiff also contends the ALJ improperly interpreted raw medical data when formulating plaintiff's RFC when he included purported "limitations" based on Dr. Jewell's neuropsychological testing. Again, the Court agrees.

The ALJ's RFC included, for example, limitations for jobs that do not require:

- regularly "solving novel nonverbal problems";

- "encoding new verbal or visual information into memory after learning the job and where new information is presented in a highly organized fashion"; and

- "speed of verbal fluency"

These limitations are taken directly from the test results set forth in Dr. Jewell's neuropsychology report. (Tr. 616-17). It is not clear to the Court why the ALJ selected certain of Dr. Jewell's findings and not others. Moreover, it is not apparent that these raw neuropsychological test results are even translatable into functional limitations. For example, the limitation prohibiting "speed of verbal fluency" is taken from results of language functioning tests which showed "[s]peed of verbal fluency was mildly impaired with phonemic cueing and average with semantic cueing." (Tr. 616). It is not apparent what "speed" the verbal fluency of a job would require to conform with the ALJ's RFC. Nor is it apparent when a job would require "encoding new verbal or visual information into memory" as that psychological term was used by Dr. Jewell. This Court has repeatedly recognized the importance of medical opinions to support a claimant's RFC and cautioned ALJs against relying on their own expertise in drawing RFC conclusions

19

from raw medical data. *See Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)). *See also Underwood v. Colvin*, No. 1:12-cv-589, 2013 WL 3467199, at *7 (S.D. Ohio July 10, 2013) (Report and Recommendation), *adopted*, 2013 WL 3964917 (S.D. Ohio July 31, 2013); *Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-407, 2012 WL 3600127, at *3 (S.D. Ohio Aug. 21, 2012). *Accord Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [ALJ's RFC] determination."). The ALJ erred by incorporating in the RFC raw neuropsychological data or test results, which were based on the ALJ's, and not the psychologist's, interpretation of that testing.

For these reasons, plaintiff's second assignment of error is well-taken and should be sustained.

**III.    This matter should be remanded for an award of benefits.**

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

20

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; s*ee also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

As discussed above, based on the reports of Drs. Jewell and Rosenthal, the only two medical sources who examined plaintiff to assess plaintiff's cognitive functioning, plaintiff's severe cognitive impairment prevents him from sustaining gainful employment. There is strong evidence that plaintiff's disability began when he experienced a ruptured aneurysm on September 9, 2009, the day before his alleged onset date of September 10, 2009, and has continued through the date of the ALJ's decision. *See* Tr. 619 (memory loss with cognitive dysfunction and unemployable for at least 12 months or more noted in July 2011 by endovascular surgeon, Todd Abruzzo, M.D.); Tr. 629 (problem of memory loss noted in June 2011 by treating neurosurgeon, Dr. Zucarrello); Tr. 640 (same in April 2011); Tr. 746 (plaintiff complained of short-term memory difficulties in March 2011). Here, the proof of disability is strong and opposing evidence is lacking in substance such that a remand will serve no purpose other than delay. Accordingly, this matter should be remanded for an award of benefits.

21

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent

with this opinion and remanded for an award of benefits.

Date: 2/11/2014

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICHARD SAUNDERS,                                          Case No. 1:13-cv-118
      Plaintiff,                                          Barrett, J.
                                                           Litkovitz, M.J.

    vs


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23